IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLEY BEESLEY,                                    6:13-CV-01473-BR

                Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

                Defendant.


ALAN STUART GRAF
208 Pine St.
Floyd, VA 24091
(540) 745-2519

            Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1053

 1 - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**FRANCO L. BECIA**
**JORDAN D. GODDARD**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2114

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Shelley Beesley seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act and Disability Insurance Benefits (DIB) under

Title II.  This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter.


                        <u>**ADMINISTRATIVE HISTORY**</u>

        Plaintiff filed applications for DIB on October 27, 2009,

and for SSI on December 3, 2009.  Tr. 75, 76.[1]  The applications

were denied initially and on reconsideration.  Tr. 76-77.  An

---

        [1] Citations to the official transcript of record filed by
the Commissioner on March 6, 2014, are referred to as "Tr."

 2 - OPINION AND ORDER

Administrative Law Judge (ALJ) held a hearing on July 11, 2012. Tr. 34.  Although Plaintiff originally alleged a disability onset date of August 1, 2007, she amended her alleged onset date to August 23, 2009, at the hearing.  Tr. 13, 37.  Plaintiff was represented by an attorney, and Plaintiff and a vocational expert (VE) testified.  Tr. 34, 125-26.

The ALJ issued a decision on August 15, 2012, in which he found Plaintiff is not entitled to benefits.  Tr. 27.  That decision became the final decision of the Commissioner on June 19, 2013, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born on August 10, 1961, and was 50 years old at the time of the July 11, 2012, hearing.  Tr. 75.  Plaintiff has a GED and some college education.  Tr. 39.  She has past relevant work experience as a waitress and grocery checker. Tr. 25.

Plaintiff alleges disability due to chronic obstructive pulmonary disease (COPD), bilateral carpal-tunnel syndrome, fibromyalgia, depressive disorder, anxiety disorder, multiple sclerosis, and migraines.  Tr. 16-17.

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the

medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 16-17.


**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574

F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other

6 - OPINION AND ORDER

words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date

of August 23, 2009.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of COPD, bilateral carpal-tunnel syndrome, fibromyalgia, depressive disorder, and anxiety disorder.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to perform "medium work . . . except she can frequently handle and finger bilaterally in an environment similar to an office setting, specifically free of smoking, severe dust and extremes of heat or cold."  Tr. 19.

At Step Four the ALJ concluded Plaintiff is unable to perform any past relevant work.  Tr. 25.

At Step Five the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience, and RFC. Tr. 25.  Accordingly, the ALJ found Plaintiff is not disabled. Tr. 26.


## **DISCUSSION**

Plaintiff contends the ALJ erred by failing to give sufficient reasons to reject the opinions of examining neurologist Mark Ramirez, M.D., and examining psychologist Judith Eckstein, Ph.D.

The opinion of an examining physician is generally accorded greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide specific, legitimate reasons for discrediting the examining physician's opinion.  *Id.* Specific, legitimate reasons for rejecting an examining physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  *See also Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  When a

physician's opinion is inconsistent with her own treatment notes,
the ALJ may properly discount that opinion. *Id.* The ALJ also
may discount a medical opinion that is inconsistent with other
substantial evidence, *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th
Cir. 2004), and may reject a physician's opinion regarding a
claimant's level of impairment if it is unreasonable in light of
other evidence in the record. *See Castaneda v. Astrue*, 322 Fed.
App'x 396, 399 (9th Cir. 2009). *See also Morgan*, 169 F.3d at
601. "The ALJ need not accept the opinion of any physician . . .
if that opinion is brief, conclusory, and inadequately supported
by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957
(9th Cir. 2002)(citing *Matney ex rel. Matney v. Sullivan,* 981
F.2d 1016, 1019 (9th Cir. 1992)).

## I.    The ALJ did not err by rejecting the opinion of Dr. Ramirez.

The ALJ gave little weight to the opinion of Dr. Ramirez
because it was based primarily on Plaintiff's self-report, which
the ALJ found lacked credibility, and because it contradicted the
opinions of state-agency nonexamining consultants.

Dr. Ramirez saw Plaintiff for a disability evaluation on
December 21, 2009. Tr. 346. In his notes Dr. Ramirez stated
Plaintiff's

> main complaint is that of significant pain that
> has been constant in her shoulders and hips as
> well as migrating in different parts of her body
> that would be severe enough to impair her daily
> activities and work. Her neurological examination
> as described above is essentially normal except

for give way weakness due to pain.  She came into
our office walking with the use of a cane although
on examination was able to ambulate well without
assistance.  However, her post exercise vital
signs revealed elevation of her heart rate and
respiratory rate which may help substantiate her
complaint of significant pain limiting her
physical abilities.  There was no increase in her
blood pressure post exercise.  She also needed to
stand up momentarily during the interview since
she experienced hip pain after being in her chair
sitting down for about 20 minutes.  The patient's
symptoms would be more related to her apparent
fibromyalgia/chronic pain and not due to multiple
sclerosis.

Tr. 348-49.  Based on those impressions Dr. Ramirez concluded:

1.  The patient's ability to stand and sit still
is only limited to about 45 to 60 minutes before
she experienced severe pain in her hips.  This is
based on the patient's report and may be supported
by the observation of having to stand up
momentarily during our interview after being
seated for about 20 minutes.  Her ability to walk
is likely limited to less than 0.25-mile each time
before experiencing pain.  This is supported by
the increase in her heart rate and respiratory
both exertion in our office when she experienced
pain in her hips.
2.  The patient's ability to lift objects is
limited to only 8 pounds per her report given that
this would typically precipitate shoulder pain.
Again, I did not appreciate any muscle weakness on
examination that would limit her ability to lift
objects although the finding of give way weakness
due to pain may support her claim.
3.  Her ability to hear and speak is not impaired
per history and examination findings.
4.  The patient's ability to handle objects is not
impaired.  She has good dexterity of her hands are
[*sic*] as long as lifting heavy objects is not
included in the tests performed.
5.  Her ability to travel is only limited to short
distances requiring a drive of less than 45
minutes to one hour given that longer periods
would precipitate pain.  However, longer trips may
be completed with intermittent stops to stand and

                    walk a while which typically helps alleviate the
                    pain in her hips associated with prolonged
                    sitting.

Tr. 349.

In his decision the ALJ gave little weight to Dr. Ramirez's opinion as to Plaintiff's exertional limitations primarily because Dr. Ramirez's opinion was based on Plaintiff's self-report of her limitations, which the ALJ found lacked credibility.[2]  Tr. 22.  "An ALJ may reject a . . . physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti,* 533 F.3d at 1041 (internal quotation marks omitted)(citing *Morgan,* 169 F.3d at 602).  *See also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").  Plaintiff, however, argues Dr. Ramirez's opinion was based not only on Plaintiff's self-reports but also on his clinical observations of Plaintiff.  Thus, Plaintiff contends the ALJ's reason for giving little weight to Dr. Ramirez's opinion is insufficient.

As noted, Dr. Ramirez concluded Plaintiff's ability to stand

---

    [2] Plaintiff does not challenge the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible.  Tr. 21.

and to sit is limited to 45-60 minutes "based on the patient's report and *may* be supported by the observation of having to stand up momentarily during our interview after being seated for about 20 minutes." Tr. 349 (emphasis added). In addition, Dr. Ramirez concluded Plaintiff could only lift up to eight pounds based on her report that more would precipitate shoulder pain. Dr. Ramirez noted his "finding of give way weakness due to pain *may* support [Plaintiff's] claim." Tr. 349 (emphasis added). Thus, Dr. Ramirez appears to be equivocal about the extent of Plaintiff's limitations. In any event, Dr. Ramirez clearly indicates his opinion is premised primarily on Plaintiff's own account of her symptoms. As noted, the ALJ discounted Plaintiff's testimony as to her symptoms; Plaintiff does not challenge the ALJ's finding that Plaintiff's testimony was not credible; and the ALJ, therefore, may disregard Dr. Ramirez's opinion because "it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *See Tommasetti*, 533 F.3d at 1041.

Although the ALJ also noted Dr. Ramirez's opinion was contradicted by state-agency nonexamining medical consultants Neal Berner, M.D., and Richard Alley, M.D., who reviewed the medical evidence on January 11, 2010 and June 15, 2010, respectively, and concluded Plaintiff's functional impact was not severe, the ALJ "depart[ed] from the state-agency medical

assessments" because of the "[a]dditional evidence received at
the hearing level." Tr. 23, 364, 397.

On this record the Court concludes the ALJ did not err when
he gave little weight to Dr. Ramirez's opinion because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

## II. The ALJ did not err by rejecting the 2012 opinion of Dr. Eckstein.

Plaintiff asserts the ALJ erred by failing to give adequate
reasons for rejecting the 2012 opinion of Dr. Eckstein,
psychologist, as to Plaintiff's ability to work. The ALJ gave
Dr. Eckstein's opinion little weight on the ground that it was
not supported by her clinical findings, Plaintiff's mental
condition showed good response to medication, and Dr. Eckstein's
opinion was contradicted by the opinions of nonexamining
physicians.

Dr. Eckstein performed a psychodiagnostic evaluation of
Plaintiff on May 13, 2010. Tr. 371. In her written report
Dr. Eckstein detailed Plaintiff's presenting problems,
background, activities of daily living, and mental status as well
as Dr. Eckstein's behavioral observations of Plaintiff. Tr. 371-
75. Dr. Eckstein concluded Plaintiff has a global assessment of

functioning (GAF) of 53.[3]  Tr. 376.

Without examining Plaintiff again, Dr. Eckstein completed a
Mental Residual Function Capacity Report provided by Plaintiff's
attorney on January 12, 2012.  Tr. 24; 534-36.  Dr. Eckstein
indicated in the Report that Plaintiff has moderate limitations
in understanding and remembering detailed instructions,
sustaining an ordinary routine without special supervision,
interacting appropriately with the general public, accepting
instructions and responding appropriately to criticism from
supervisors, responding appropriately to changes in the work
setting, and setting realistic goals and making plans
independently of others.  Tr. 534-35.  Dr. Eckstein also noted
Plaintiff has marked limitations in maintaining attention and
concentration for extended periods; performing activities within
a schedule, maintaining regular attendance, and being punctual
within customary tolerances; and completing a normal workday and

---

[3] Although the fifth edition of the *Diagnostic and
Statistical Manual of Mental Disorders* issued May 27, 2013,
abandoned the GAF scale in favor of standardized assessments for
symptom severity, diagnostic severity, and disability (*see
Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V)
16 (5th ed. 2013)), at the time of Plaintiff's assessment and the
ALJ's opinion the GAF scale was used to report a clinician's
judgment of the patient's overall level of functioning on a scale
of 1 to 100 (*see Diagnostic and Statistical Manual of Mental
Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)).  In the fourth
edition, a GAF of 51-60 indicated moderate symptoms (*e.g.*, flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school
functioning (*e.g.*, few friends, conflicts with peers or co-
workers).

workweek without interruptions because of psychologically-based symptoms and performing at a constant pace without an unreasonable number and length of rest periods.  Tr. 535.

The ALJ found "[i]t is unclear how the relatively limited findings in the evaluation, as noted above, translated to marked limitations in the residual functional capacity, especially in light of the treatment notes showing good response to medications." Tr. 24.  The ALJ, therefore, gave Dr. Eckstein's report "little weight in assessing appropriate work related limitations." Tr. 24.

Plaintiff contends Dr. Eckstein's findings were not "relatively limited" as reflected in the fact that she noted Plaintiff's unresolved history of childhood sexual abuse by Plaintiff's father and found Plaintiff's medical problems exacerbated her psychological problems.[4]  Plaintiff also asserts the ALJ's characterization of Plaintiff's condition as "showing good response to medications" is inaccurate.

**A.    Dr. Eckstein's Findings in her 2010 and 2012 Reports**

Plaintiff contends the ALJ erred when he concluded

---

[4] Although Plaintiff first states she "takes issue with the ALJ's description of Dr. Eckstein's report as containing 'relatively limited findings[,]'" she then states "the ALJ erred as a matter of law by characterizing Plaintiff's combination of mental and physical impairments as 'relatively limited.'"  Pl.'s Br. 9-10.  The Court notes the ALJ described Dr. Eckstein's findings as relatively limited and not Plaintiff's impairments. Tr. 24.

Dr. Eckstein's findings were "relatively limited" and inconsistent.

As noted, an ALJ may discount a medical source's opinion that is inconsistent with that source's other findings. *Bayliss*, 427 F.3d at 1216.  In his opinion the ALJ recounted some of Dr. Eckstein's findings from her 2010 evaluation of Plaintiff. Dr. Eckstein found even though Plaintiff "reported several symptoms related to anxiety, she did not appear anxious." Tr. 24.  Dr. Eckstein also reported Plaintiff "showed some difficulty with recall and could not perform serial sevens, but she performed well on digit span and serial threes."  Tr. 24.  In addition, Dr. Eckstein "noted [Plaintiff] was functioning fairly well from a cognitive standpoint but her concentration appeared diminished."  Tr. 24.  Dr. Eckstein also found Plaintiff was prompt, cooperative, and dressed neatly and casually and did not demonstrate any overt pain behavior or speech abnormalities. Tr. 374.  According to Dr. Eckstein, Plaintiff's "information fund was strong in response to factual types of questions . . . [and her] responses to similarities and proverbs questions indicate fairly good abstract reasoning ability."  Tr. 375.

In his decision the ALJ pointed out that Dr. Eckstein only examined Plaintiff one time in 2010.  The ALJ then referred to specific examples of Dr. Eckstein's conclusions in her 2012 report that were unsupported by her clinical findings from her

single examination of Plaintiff in 2010. As noted, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957 (citation omitted).

**B. Plaintiff's Response to Medications**

Plaintiff asserts the ALJ's characterization of Plaintiff's condition as "showing good response to medications" is inaccurate. The ALJ rejected Dr. Eckstein's evaluation of Plaintiff's limitations in her 2012 report based on, among other things, "treatment notes showing good response to medications." Tr. 24.

Treatment notes throughout the medical record suggest medications generally have been effective and reflect those medications have provided Plaintiff with stability when occasionally adjusted. For instance, in July 2011 Plaintiff's depression improved after beginning a regimen of Provigil and Cymbalta. Tr. 667. When those medications ceased to be effective in January 2012, psychiatric mental-health nurse practitioner (PMHNP) Nathaniel Holt adjusted the medications by decreasing Cymbalta and adding Seroquel. Tr. 639. This adjustment proved to be effective as evidenced by PMHNP Holt's description of Plaintiff's depression as "controlled" in March 2012. Tr. 734.

The record also reflects Plaintiff acknowledged the

effectiveness of her medications at the hearing. Tr. 46. When
Plaintiff stated she receives mental-health treatment and
medications for bipolar disorder, her attorney asked her: "Do
you think the medications are effective for the symptoms?" and
Plaintiff replied: "I think so, yes. They're working real well,
yeah." Tr. 46. Plaintiff, nevertheless, asserts the ALJ's
reasoning is selective because her "mental condition has been up
and down in severity and cannot be characterized in whole as
having a good response to the medication and thus inconsistent
with Dr. Eckstein's assessment." Pl.'s Br. 10.

Thus, the ALJ noted "[t]reatment for [Plaintiff's] mental
impairments is admittedly, per hearing testimony and self-report
to treating sources, effective and providing stability." Tr. 21.

### C.    Other Medical Evidence in the Record

The record reflects other medical sources contradict
Dr. Eckstein's conclusions as to Plaintiff's limitations. For
example, state-agency nonexamining psychological consultant Paul
Rethinger, Ph.D., reviewed the available evidence in June 2010,
including Dr. Eckstein's evaluation, and concluded Plaintiff is
capable of understanding, remembering, and sustaining
concentration and persistence with routine tasks and capable of
occasional interaction with the general public. Tr. 391, 395.
Although the opinion of Dr. Rethinger, a nonexamining
psychological consultant, alone would not suffice to justify

giving little weight to the opinion of Dr. Eckstein, an examining physician, Dr. Rethinger's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan*, 169 F.3d at 600.  As noted, however, the ALJ provided two legally sufficient reasons for giving Dr. Eckstein's opinion little weight:  (1) Dr. Eckstein's opinion is not supported by her own findings and (2) Plaintiff's condition responds well to medications.  *See Taylor,* 659 F.3d at 1233.

On this record the Court concludes the ALJ did not err when he gave little weight to Dr. Eckstein's conclusions regarding Plaintiff's limitations and ability to work because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 22nd day of October, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge